# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROCK CREEK ALLIANCE; CABINET
RESOURCE GROUP; EARTHWORKS;
ALLIANCE FOR THE WILD ROCKIES;
NATURAL RESOURCES DEFENSE
COUNCIL; TROUT UNLIMITED; IDAHO
COUNCIL OF TROUT UNLIMITED;
PACIFIC RIVERS COUNCIL; GREAT
OLD BROADS FOR WILDERNESS,
              *Plaintiffs-Appellants,*

        v.

U.S. FISH AND WILDLIFE SERVICE,
             *Defendant-Appellee,*

REVETT SILVER COMPANY,
   *Intervenor-Defendant-Appellee.*

No. 10-35596

D.C. No.
9:08-cv-00028-
DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
July 14, 2011—Portland, Oregon

Filed November 16, 2011

Before: Harry Pregerson, Kim McLane Wardlaw, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Pregerson

## COUNSEL

Douglas L. Honnold, Earthjustice, Bozeman, Montana; Timothy J. Preso (argued), Earthjustice, Bozeman, Montana; Todd D. True, Earthjustice, Bozeman, Montana; Stephen D. Mashuda, Earthjustice, Bozeman, Montana, for the plaintiffs-appellants.

Ignacio S. Moreno, Assistant Attorney General, Washington, D.C.; Andrew C. Mergen, Washington, D.C.; Robert H. Oakley (argued), Washington, D.C., for the defendant-appellee.

Alan L. Joscelyn and KD Feeback, Gough, Shanahan, Johnson & Waterman, PPLP, Helena, Montana; Robert Tuchman (argued) and Charlotte L. Neitzel, Holme, Roberts & Owen LLP, Denver, Colorado, for the intervenor-defendant-appellee.

## OPINION

PREGERSON, Circuit Judge:

Plaintiff-Appellant Rock Creek Alliance appeals the district court's grant of summary judgment in favor of Defendant-Appellee the U.S. Fish and Wildlife Service and Intervenor-Defendant-Appellee Revett Silver Company in an action brought pursuant to Section 7 of the Endangered Species Act, which requires federal agencies to consult with the Fish and Wildlife Service before undertaking any action "authorized, funded, or carried out" by the agency that might "jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat" used by any endangered or threatened species. 16 U.S.C. § 1536(a)(2). We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's well-reasoned opinion.[1]

---

[1]The district court consolidated the instant case—Rock Creek Alliance's case against the Fish and Wildlife Service (D.C. No. 9:08-cv-00028-DWM)—with a separate case brought by Rock Creek Alliance against the U.S. Forest Service (D.C. No. 9:05-cv-00107-DWM). The district court filed a single opinion resolving both cases on cross-motions for summary judgment. *See Rock Creek Alliance v. U.S. Forest Serv.,* 703 F. Supp. 2d 1152 (D. Mont. 2010).

In the case against the Forest Service (D.C. No. 9:05-cv-00107-DWM), the district court granted summary judgment to the Forest Service and Revett Silver Company on some claims and Rock Creek Alliance on other claims. The result of this ruling was to set aside the Forest Service's Record of Decision and Final Environmental Impact Statement, and to remand the matter to the Forest Service for further action.

*BACKGROUND*

Revett Silver Company proposes to build and operate a copper and silver mine in northwest Montana, part of which will be on land managed by the U.S. Forest Service. Because the mine may impact two species listed as threatened under the Endangered Species Act—the bull trout and the grizzly bear—the Forest Service was required to engage in formal consultations with the Fish and Wildlife Service before approving the mine. 16 U.S.C. § 1536(a)(1). As a part of those consultations, the Fish and Wildlife Service issued two biological opinions that concluded that the mine would result in "no adverse modification" to critical bull trout habitat and would result in "no jeopardy" to the local grizzly bear population.[2]

In the district court, Rock Creek Alliance challenged the biological opinions, arguing that the Fish and Wildlife Service's conclusions were arbitrary, capricious, and violated the Endangered Species Act. The district court disagreed, and granted summary judgment in favor of the Fish and Wildlife Service and Revett Silver Company. Rock Creek Alliance then appealed, arguing that: (1) the Fish and Wildlife Service improperly relied on large-scale analysis in evaluating the mine's impact on bull trout; (2) the Fish and Wildlife Service did not adequately address the mine's impact on bull trout recovery; (3) the methodology for calculating grizzly bear

---

The two cases were subsequently severed by the district court so that Rock Creek Alliance could separately appeal the decision in its case against the Fish and Wildlife Service. Accordingly, the only claims before us are those asserted by Rock Creek Alliance against the Fish and Wildlife Service in D.C. No. 9:08-cv-00028-DWM, and our opinion affirms only the portions of the district court's opinion relating to that case.

[2]The Fish and Wildlife Service also concluded that the mine would result in "no jeopardy" to the bull trout. Rock Creek Alliance, however, does not challenge that finding on appeal.

mitigation habitat was flawed; and (4) the grizzly bear habitat mitigation plan was unreasonably speculative.

## DISCUSSION

We review the district court's "grant of summary judgment de novo, reviewing directly the [Fish and Wildlife Service's] action under the Administrative Procedure Act [("APA")] . . . ." *Ariz. Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160, 1163 (9th Cir. 2010). Under the APA, we must set aside an agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

We now address each of Rock Creek Alliance's four arguments.

**[1]** (1) The Fish and Wildlife Service did not err by conducting a large-scale analysis and by relying on the relative size of Rock Creek critical habitat to evaluate the mine's impact on the bull trout. The Fish and Wildlife Service properly compared the relative size of the impacted 2.88 stream miles of Rock Creek to the overall size of the Lower Clark Fork Core Area critical habitat—135 stream miles—to determine that the bull trout's critical habitat would not be adversely modified. The Fish and Wildlife Service examined in detail the proposed mine's impact on each of the critical habitat elements in the local Rock Creek environment: water temperature, substrate composition (specifically, increased sediment load), migratory corridors, channel stability, and cover. The Fish and Wildlife Service ultimately concluded that "[a]ll [critical habitat] elements in Rock Creek are expected to remain functional, albeit at a lower [functional] level," and the most significant impacts would only be temporary, lasting five to seven years. Thus, the Fish and Wildlife Service's conclusion was not based solely on the scale of the impact, but also on the duration and the level by which the habitat's functionality would be diminished.

**[2]** Moreover, the Fish and Wildlife Service's actions were reasonable under our decision in *Gifford Pinchot Task Force v. U.S. Fish and Wildlife Service*, 378 F.3d 1059, 1075 (9th Cir. 2004). The agency did not attempt to hide the local impacts of the action, but considered them in detail. *Contra Fed'n of Fisherman's Ass'ns v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1035-37 (9th Cir. 2001) (finding that the National Marine Fisheries Service did not appropriately evaluate the localized impact of the project in issuing their "no jeopardy" opinion). Because there is no evidence in the record that the Fish and Wildlife Service masked "some localized risk . . . by [the] use of large scale analysis," we should "not second-guess" the Fish & Wildlife Service's conclusion that the mine would not adversely affect the critical habitat. *Gifford Pinchot,* 378 F.3d at 1075.

**[3]** (2) The Fish and Wildlife Service did not fail to consider the mine's impact on bull trout recovery. The Fish and Wildlife Service explicitly addressed bull trout recovery, concluding that, "[a]t most, the *rate of recovery* of the core area population may slow slightly, if at all, assuming fish passage at the dams and habitat restoration continues and is successful." The Fish and Wildlife Service also noted that "there may be a slight slowing in the *rate of recovery* for the core area population because of the slight loss in recruitment potential, but if current efforts to *recover* [migratory bull trout] . . . continue to be successful and overshadow the potential loss, the *recovery rate* of the core area may not be affected."

**[4]** The Fish and Wildlife Service did not, however, address the bull trout recovery issue in separate, distinct sections of the biological opinion, as was contemplated by a 2006 guidance memorandum from the Director of the Fish and Wildlife Service. But the "[Fish and Wildlife Service] must be presumed to have followed the adverse modification regulation," and to have properly considered the mine's impact on critical bull trout recovery, "unless rebutted by evidence in the record" to the contrary. *Gifford Pinchot,* 378

F.3d at 1071-72 ("[W]e afford the agency a presumption of regularity."). A fair reading of the Fish and Wildlife Service's biological opinion, coupled with the deference due to the agency, leads to the conclusion that the Fish and Wildlife Service adequately considered the impact that the mine could have on the habitat's value for bull trout recovery.

**[5]** (3) The Fish and Wildlife Service's methodology for calculating the necessary amount of grizzly bear mitigation habitat was not flawed merely because the Fish and Wildlife Service failed to numerically discount the effectiveness of proposed mitigation parcels because they are already impacted by existing development. The Fish and Wildlife Service expressly acknowledged the limitations created by existing development on proposed mitigation land. Moreover, the Endangered Species Act does not require that the Fish and Wildlife Service replace impacted habitat on an acre for acre basis, and the Fish and Wildlife Service did not rely on an acre for acre replacement in making its "no jeopardy" conclusion. To the contrary, the required mitigation plan for the mine is multi-faceted and includes not only Revett Silver Company's required acquisition of mitigation land parcels, but also management of road and trail access into bear habitat, management of attractants, information and education programs, increased law enforcement, funding for enhanced monitoring and research, measures to reduce habitat fragmentation, and the introduction to the area of six female grizzly bears.

The Fish and Wildlife Service concluded that the extensive package of mitigation measures supported a finding that the proposed mine posed "no jeopardy" to the grizzly bears because "collectively, the measures would reduce, remove or more than offset the potential adverse effects of the proposed action." The mitigation plan was so robust that the Fish and Wildlife Service concluded it "would in fact improve conditions over the long-term over the existing conditions, ulti-

mately promoting the recovery of the [local] grizzly bear population."**3**

**[6]** (4) The proposed mitigation plan was not unreasonably speculative, and the plan was appropriately relied upon by the Fish and Wildlife Service. Before approving a proposed project, an agency must have "specific and binding plans," "solid guarantees," and a "clear, definite commitment of resources." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 935-36 (9th Cir. 2008). The Fish and Wildlife Service's mitigation plan fulfills these requirements. If Revett Silver Company is unable to acquire the necessary mitigation parcels, the company will not be allowed to open the mine. Revett Silver Company must also establish "a trust fund or post a bond prior to implementation of the [mine] to insure full implementation of the mitigation plan." Moreover, Revett Silver Company has already purchased approximately 273 acres of mitigation land, demonstrating its commitment of resources to the mine.

## *CONCLUSION*

For the foregoing reasons, the Fish and Wildlife Service's determination that the mine would entail "no adverse modification" to bull trout critical habitat and would result in "no jeopardy" to grizzly bears was not arbitrary, capricious, or in violation of the Endangered Species Act. **AFFIRMED.**

---

**3**For another example where this court upheld a Fish and Wildlife Service's "no jeopardy" conclusion because of comprehensive mitigation measures that addressed a potential threat to a grizzly bear habitat, *see Selkirk Conservation Alliance v. Forsgren*, 336 F.3d 944, 955-57 (9th Cir. 2003).